UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TIMOTHY BROWN, ROBERT POCHESCI, STEVA POCHESCI, HARRY T. RICH, and LISA E. RICH | : : : : | |
| Plaintiffs | : : | CASE NO. 3:14-cv-644 |
| v. | : : | |
| OCWEN LOAN SERVICING, LLC | : : | May 8, 2014 |
| Defendant | : | |

## COMPLAINT

Plaintiffs Timothy Brown, Robert Pochesci, Steva Pochesci, Harry T. Rich, and Lisa Rich, by and through their undersigned attorneys, hereby file this Complaint against Ocwen Loan Servicing, LLC ("Defendant"), and in support thereof allege and state as follows:

### INTRODUCTION

1. This is an action for damages, costs, and attorney's fees seeking relief pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA"), the Connecticut Unfair Trade Practices Act, C.G.S. § 42-110a et seq. ("CUTPA"), and certain common-law claims.

### JURISDICTION AND VENUE

2. This Court has jurisdiction under 12 U.S.C. § 2614 and 28 U.S.C. § 1337(a).

3. Venue in this District is proper as the Plaintiff Timothy Brown is an individual residing in Watertown, Connecticut, Plaintiffs Robert and Steva Pochesci are individuals residing in Branford, Connecticut, Plaintiffs Harry E. and Lisa E. Rich are individuals residing in Stamford,

Connecticut, the Defendant transacts business within the State of Connecticut, and the conduct complained of occurred in this District.

## PARTIES

4. The Plaintiff Timothy Brown is a natural person residing in Watertown, Connecticut.

5. The Plaintiffs Robert and Steva Pochesci are natural persons residing in Branford, Connecticut.

6. The Plaintiffs Harry T. and Lisa E. Rich are natural persons residing in Stamford, Connecticut.

7. Each of the Plaintiffs is a "person" within the meaning of CUTPA and RESPA in that all are "natural persons" under C.G.S. § 42-110a(3) and "individuals" under 12 U.S.C. § 2602(5).

8. The Defendant Ocwen Loan Servicing, LLC is a Delaware limited liability company engaged in the business of servicing residential mortgage loans in Connecticut, with its principal place of business located at 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409.

9. Each of the Plaintiffs' loans is a federally related mortgage loan as defined under 12 U.S.C. § 2602(1) in that each loan is secured by a first lien on a one-family unit of residential real property and was made by a lender satisfying the requirements of 12 U.S.C. § 2602(1)(B)(i) or a creditor satisfying the requirements of 12 U.S.C. § 2602(1)(B)(iv).

10. The Defendant is the loan servicer of the Plaintiffs' loans for purposes of 12 U.S.C. § 2605.

11. The Defendant is a successor-in-interest in all relevant respects of Litton Loan Servicing LP ("Litton") and American Home Mortgage Servicing, Inc. ("AHMSI").

**FACTUAL ALLEGATIONS**

<u>Plaintiff Timothy Brown</u>

 12. Plaintiff Timothy Brown entered into a loan modification agreement under the federal government's Home Affordable Modification Program with Litton that became effective as of August 1, 2011 (the "Brown Agreement"). A true and correct copy of the Brown Agreement is attached hereto as Exhibit A.

 13. The Brown Agreement modified his note in certain ways, but did not modify the requirement of such note that any attorney fees attributable to the enforcement of such document and charged to his account by his servicer be "reasonable" and that any other charges or fees charged to his account be proper and actually incurred.

 14. Per section 3.B of the Brown Agreement, the modified loan balance of $269,662.99 included "all amounts and arrearages that will be past due as of [August 1, 2011] (including unpaid and deferred interest, fees, escrow advances and other costs…)."

 15. Such amounts and arrearages should have included all reasonable charges and fees incurred by Litton as of August 1, 2011.

 16. Per section 3.C of the Brown Agreement, such amounts and arrearages were subject to a principal reduction opportunity under HAMP called HAMP Principal Reduction Alternative, or HAMP PRA.

 17. Pursuant to HAMP PRA, the Brown Agreement provided that if he made monthly payments such that he never fell behind three months on his mortgage during the three years following the August 1, 2011 effective date, then $70,425.49 of his modified loan balance – every penny above 115% of his home's then value of $173,250 – would be forgiven in equal

installments on each of the first, second, and third anniversaries of the Brown Agreement's effective date.

18. Effective September 1, 2011, the Defendant took over servicing of Mr. Brown's mortgage loan and fully assumed all of Litton's rights and responsibilities under the Brown Agreement. The Defendant services Mr. Brown's mortgage loan on behalf of the note's owner.

19. Through a letter dated September 6, 2011, the Defendant informed Mr. Brown that he owed an additional $1303 in "collection costs."

20. In a monthly mortgage statement dated September 9, 2011, the Defendant sought $1,303 in "Prior Servicer Fees."

21. Each monthly statement thereafter and continuing to the date hereof, the Defendant has claimed Mr. Brown owes this $1,303 in fees.

22. On May 16, 2012, Mr. Brown sent the Defendant a qualified written request pursuant to 12 U.S.C. § 2605(e)(1)(B) (a "QWR") by USPS certified mail, return receipt requested, in which he demanded that the Defendant provide documentation regarding the $1,303 fees and then remove the fees from his account.

23. On June 7, 2012, the Defendant responded, claiming that Mr. Brown's loan was due for $1,303 in "outstanding fees / expenses" at the time the loan was transferred: $1,250.00 for "Attorney Fee and Collection Cost" and $53.00 for "Discharge of Lis Pendens." The Defendant claimed both "fees / expenses" were assessed to Mr. Brown on July 28, 2011. A true and correct copy of the response is attached hereto as Exhibit B.

24. Defendant included with its response a payment history for Mr. Brown's account for the time his loan was serviced by Litton. The history had no line items for either fee, and indicated

4

that no charges were assessed to his account on July 28, 2011. A true and correct copy of the payment history is attached hereto as Exhibit C.

25. The Defendant failed to provide any documentation regarding the $1,250.00 "Attorney Fee and Collection Cost" fee, and so Mr. Brown has no way to know whether the fee is reasonable nor can he confirm that the fee was actually incurred by Litton. The $53 fee for Discharge of Lis Pendens fee is reasonable in theory, given that the town clerk of Watertown would have charged a fee for recording such a discharge, but given the payment history, Mr. Brown cannot confirm that Litton actually incurred the fee in servicing his loan.

26. But, irrespective of whether they were reasonable or actually incurred, neither fee could be collected from Mr. Brown from the Defendant given the terms of the Brown Agreement. The Brown Agreement purported to include all charges and fees that were past due as of August 1, 2011. These fees were assessed on July 28, 2011. Accordingly, they should have been included in the modified loan balance.

27. Further, had the fees been included in the modified loan balance, they would have been subject to the HAMP PRA forgiveness opportunity because the Brown Agreement offered Mr. Brown an opportunity to reduce his balance to 115% of his home's then value, irrespective of the amount of his modified loan balance. All fees and interest in excess of that 115% value would be included in the reduction opportunity. In other words, even if the fees were reasonable, the Defendant is seeking to collect $1,303 in fees from Mr. Brown for which he should have been able earn forgiveness under section 3.C of the Brown Agreement.

28. Mr. Brown has remained in good standing under the Brown Agreement, fulfilling the requirement that he keep his payments less than 90 days' late in order to earn principal forgiveness under his Agreement. If the fees were included in his modified loan balance, a third

would have been forgiven on August 1, 2012 and another third would have been forgiven on August 1, 2013. Further, so long as Mr. Brown keeps making timely mortgage payments, the remaining third would have been forgiven later this year, on August 1, 2014.

29. Mr. Brown, through counsel, sent a second QWR to the Defendant on September 10, 2012 by USPS certified mail, return receipt requested. In this QWR he explained that fees assessed prior to August 1, 2011 should have been rolled into his modified loan balance. Otherwise, they were improper. Mr. Brown also requested a copy of his fully executed loan modification agreement.

30. The Defendant responded by explaining that the loan was modified "effective July 13, 2011," notwithstanding the plain language of the Brown Agreement and, on that basis, refused to remove both the $1,250 and $53 fees from Mr. Brown's account. The Defendant did not mention nor did it provide a fully signed Brown Agreement.

31. Mr. Brown, through counsel, tried again to seek an explanation for the fees charged, requesting documentation of the services supposedly provided with respect those fees, *inter alia*, with a third QWR sent to the Defendant via certified mail, return receipt requested, on October 9, 2013. The Defendant did not respond to this QWR.

32. The Defendant continues to claim that Mr. Brown owes it $1,303 in improper fees.

Plaintiffs Robert and Steva Pochesci

33. Plaintiffs Robert and Steva Pochesci fell behind on their mortgage loan in 2009 but cured their default through a loan modification with Litton that was effective May 1, 2010 (the "Pochesci Agreement"). A true and correct copy of the Pochesci Agreement is attached hereto as Exhibit D.

34. The Pochesci Agreement modified their mortgage in certain ways, but did not modify the requirement in such note that any attorney fees attributable to the enforcement of such document and charged to their account by their servicer be "reasonable" and that any other charges or fees charged to their account be proper and actually incurred.

35. The Defendant services Mr. and Mrs. Pochesci's mortgage loan on behalf of the note's owner.

36. Per section 3.B of the Pochesci Agreement, their modified loan balance included "all amounts and arrearages that will be past due as of [May 1, 2010] (including unpaid and deferred interest, fees, escrow advances and other costs…)."

37. Such amounts and arrearages should have included all reasonable charges and fees incurred by Litton in connection with its collection efforts for Mr. and Mrs. Pochesci's mortgage loan.

38. Litton took a few months to process and recognize the loan modification. By July 15, 2010, however, it had processed the modification. The statements it sent Mr. and Mrs. Pochesci, beginning with the statement dated July 15, 2010, reflected only that they owed their usual monthly payment.

39. At some point thereafter, Litton began seeking $1,484 in fees from Mr. and Mrs. Pochesci each month.

40. On or about September 1, 2011, the Defendant took over servicing of Mr. and Mrs. Pochesci's mortgage loan and fully assumed all of Litton's rights and responsibilities under the Pochesci Agreement.

7

41. Soon thereafter, the Defendant sought $1,484 from Mr. and Mrs. Pochesci on each of its monthly statements for "prior servicing fees." In at least one month, however, these fees were a bit less: $1,474.

42. On December 17, 2012, through counsel, Mr. and Mrs. Pochesci sent a QWR via USPS certified mail, return receipt requested, to the Defendant. The QWR asked for documentation supporting the fees and for the Defendant to remove such fees as Mr. and Mrs. Pochesci believed there was no good reason for the fees.

43. The Defendant responded via letter dated January 4, 2013 claiming that the loan was modified on July 7, 2010, notwithstanding its May 1, 2010 effective date. The Defendant also said that the two fees were (a) $1473.50 for "licenses/dues/subscriptions," assessed on July 15, 2010, and (b) $10.50 for "property inspection" on July 23, 2010. A true and correct copy of this response is attached hereto as Exhibit E.

44. On January 14, 2013, through counsel, Mr. and Mrs. Pochesci sent a second QWR to the Defendant via USPS certified mail, return receipt requested, that requested further explanation of the fees on the basis that the "licenses/dues/subscriptions" fee made little sense and that the $10.50 "property inspection" fee was improper as Mr. and Pochesci were current on their loan at the time it was assessed.

45. The Defendant responded via letter dated January 24, 2013. It disclosed a series of fees charged to the account prior to the modification but failed to explain the two charges it had previously disclosed. Among the newly disclosed fees were (a) a $369.00 "maintenance" charge from November 10, 2008, (b) two "attorney fees and collection" entries totaling $2,075.12, and (c) $358.80 in "foreclosure cost." A true and correct copy of this response is attached hereto as Exhibit F.

46.  No foreclosure action had ever been commenced against Mr. and Mrs. Pochesci.

47. On October 9, 2013, through counsel, Mr. and Mrs. Pochesci sent a third QWR via USPS certified mail, return receipt requested, challenging the legitimacy and reasonableness of the newly disclosed charges, particularly because they were never in foreclosure, and asking the Defendant to substantiate the various fees and charges.

48. On October 19, 2013, the Defendant responded by sending a payment history from the period during which Mr. and Mrs. Pochesci's loan was serviced by Litton. The Defendant also sent a separate response in which it provided only a generic explanation of its practices for charging legal fees and property inspection fees to a borrower's account, rather than an explanation of why it charged such fees to Mr. and Mrs. Pochesci's account. A true and correct copy of the relevant portion of the payment history is attached hereto as Exhibit G.

49. On December 16, 2013, through counsel, Mr. and Mrs. Pochesci sent a fourth QWR via USPS certified mail, return receipt requested, that explained problems with the October 19, 2013 payment history. Specifically, the history showed (1) a "payment" of $1,473.50 from July 14, 2010 rather than a charge for $1,473.50 on July 15, 2010, and (2) no $10.50 charge for property inspection in all of 2010. Mr. and Mrs. Pochesci asked the Defendant, based on the payment history it had provided, to cease collection of these two unsubstantiated fees.

50. The Defendant responded on February 8, 2014. It did not attempt to substantiate or justify the fees, nor did it address the discrepancies with the payment history. Instead it asserted that the modification had been "completed" on July 7, 2010 and that any fees assessed after that date, including the two fees totaling $1,484, were valid. A true and correct copy of the response is attached hereto as Exhibit H.

51. The Defendant continues to seek payment of the $1,484 each month from Mr. and Mrs. Pochesci and has refused to lower the principal balance on account of the unsubstantiated foreclosure, collection, and "maintenance" fees.

Plaintiffs Harry and Lisa Rich

52. The Defendant services Mr. and Mrs. Rich's mortgage loan pursuant to a certain note and mortgage on behalf of the note's owner. Their note provides that any attorney fees attributable to the enforcement of such document and charged to their account by their servicer be "reasonable" and that any other charges or fees charged to their account be proper and actually incurred.

53. Plaintiffs Harry and Lisa Rich fell behind on their then-AHMSI-serviced mortgage loan in 2008 and 2009. Even though they fell behind, AHMSI never caused them to be served with a summons and complaint or otherwise started a foreclosure action in court.

54. Mr. and Mrs. Rich cured their default by reinstating in 2010.

55. On or about March 11, 2013, the Defendant assumed servicing responsibility for their loan.

56. Soon thereafter, the Defendant began claiming that Mr. and Mrs. Rich owed $2,394 in "prior servicing fees."

57. Mr. and Mrs. Rich contested these fees through a QWR dated on or about April 1, 2013. They sent the QWR to the Defendant via USPS certified mail, return receipt requested.

58. The Defendant responded on April 11, 2013 and asserted that while the fees "were not disclosed on the account statements sent by [AHMSI]…they were due on the loan." The Defendant said the fees were $1,364 for "Legal Costs-FCLS," $56.17 for "Collection Cost,"

$6.17 for "Prior Payment Shortage Fee," and $967.66 for "Title Fee." A true and correct copy of the first page of this response is attached hereto as Exhibit I.

59. On or about May 1, 2013, Mrs. Rich sent a second QWR via certified mail, return receipt requested, and requested a payment history showing documentation of the fees.

60. On July 1, 2013, the Defendant sent Mr. and Mrs. Rich a payment history that did not explain the nature or origin of the "prior servicing fees." A true and correct copy of this response is attached hereto as Exhibit J.

61. On or about November 5, 2013, Mr. and Mrs. Rich sent a third QWR through counsel via USPS certified mail, return receipt requested, in which, among other things, they asked for documentation of the charged fees.

62. As of the date hereof, while the Defendant acknowledged receipt of this QWR, it has failed to respond to it.

63. The Defendant continues to seek $2,394 in fees each month from Mr. and Mrs. Rich.

## CLAIMS

### Count I

### VIOLATION OF RESPA

64. The Plaintiffs incorporate by reference the allegations in Paragraphs 1-63 as if fully set forth herein.

65. The Defendant violated RESPA with respect to the Plaintiffs' QWRs by failing to:

   a. Respond to certain QWRs within the applicable statutory period in violation of 12 U.S.C. § 2605(e); and

   b. Make appropriate corrections to the Plaintiffs' mortgage accounts in response to their QWRs pursuant to 12 U.S.C. § 2605(e)(2)(A).

66. The Defendant has engaged in a pattern or practice of noncompliance with 12 U.S.C. § 2605(e), to wit: repeatedly failing to timely and properly respond to the Plaintiffs' QWRs.

67. Joinder of Plaintiffs' actions against Defendant is proper because each Plaintiff's right to relief arises out of the same series of transactions: Defendant's failure to timely respond to their QWRs and failure to make corrections to their account in response to their QWRs. Further, there are common questions of fact concerning the nature and existence of the Defendant's scheme, policy, and/or practice of disregarding its statutory and contractual obligations to (a) impose only those fees authorized by the Plaintiffs' loan documents and (b) timely and properly respond to QWRs, and there are common questions of law regarding whether Defendant's similar actions against each Plaintiff and its common schemes, policies, and/or practices violate RESPA.

68. As a result of the above RESPA violations, the Defendant is liable to the Plaintiffs for actual and consequential damages, statutory damages pursuant to 12 U.S.C. § 2605(f)(1)(B), costs, and attorney's fees.

Count II

BREACH OF CONTRACT

69. The Plaintiffs incorporate by reference the allegations in Paragraphs 1-63 as if fully set forth herein.

70. The Defendant services each Plaintiff's mortgage loan pursuant to a note that requires the Plaintiffs may only be charged for fees and costs to the extent that such charges were proper and actually incurred and that any associated fees charged to their account are "reasonable."

71. Furthermore, with respect to Mr. Brown's loan, the Plaintiff may not collect "unpaid and deferred interest, fees, escrow advances and other costs" attributable to the period prior to the

effective date of the Brown Agreement because such amounts should have already been capitalized under such agreement.

72. The Defendant breached each Plaintiff's note by charging their account with improper, unauthorized, and unreasonable fees: $1,303 for Mr. Brown, $4,286.92 for Mr. and Mrs. Pochesci, and $2,394 for Mr. and Mrs. Rich.

73. Joinder of Plaintiffs' actions against Defendant is proper because each Plaintiff's right to relief arises out of the same series of transactions: Defendant's pattern or practice of charging the Plaintiffs' accounts with charges and fees that are improper, unauthorized, and unreasonable pursuant to contracts that are substantially equivalent in terms of their wording (not figures). Further, there are common questions of fact concerning the nature and existence of the Defendant's scheme, policy, and/or practice of disregarding its statutory and contractual obligations to impose only those fees authorized by the loan documents, and there are common questions of law regarding whether Defendant's similar actions against each Plaintiff and its common schemes, policies, and/or practices breach the agreements under which it services the Plaintiffs' mortgage loans.

74. As a result of these breaches of each Plaintiff's note and the Brown Agreement, the Defendant is liable to the Plaintiffs for actual and consequential damages, costs, and, pursuant to C.G.S. § 42-150bb, attorney's fees.

<u>Count III</u>

VIOLATION OF CUTPA

75. The Plaintiffs incorporate by reference the allegations in Paragraphs 1-63 as if fully set forth herein.

76. The actions of the Defendant were done in the conduct of trade or commerce.

77. The Defendant has engaged in unfair and/or deceptive acts or practices within the meaning of C.G.S. § 42-110b(a) including, but not limited to:

   a. Failing to timely and properly respond to the Plaintiff's inquiries regarding their loan accounts;

   b. Failing to correct the errors raised by the Plaintiffs in their correspondence; and

   c. Improperly charging the Plaintiffs for fees and costs to which it is not entitled.

78. The Defendant's actions have offended public policy, including the servicing standards set forth in its recent settlement with the federal Consumer Financial Protection Bureau (CFPB) and 49 states' attorneys general, RESPA, and the servicing rules found in federal "Regulation X," as issued by the CFPB.

79. The Defendant's actions are willful, immoral, unscrupulous, unethical, and oppressive, and cause substantial injury to customers like the Plaintiffs.

80. As a direct, proximate, and foreseeable result of the foregoing acts and omissions, the Plaintiffs have suffered an ascertainable loss as that term is used in C.G.S. § 42-110g(a), to wit: (1) being held liable for improper fees and charges, and (2) expenses incurred in unsuccessfully attempting to resolve their dispute with the Defendant.

81. Joinder of Plaintiffs' actions against Defendant is proper because each Plaintiff's right to relief arises out of the same series of transactions: Defendant's pattern or practice of charging the Plaintiffs with charges and fees that are improper, unauthorized, and unreasonable pursuant to contracts that are substantially equivalent in terms of their wording (not figures), and with failing to timely and properly respond to their inquiries regarding such charges and fees. Further, there are common questions of fact concerning the nature and existence of the Defendant's scheme, policy, and/or practice of disregarding its statutory and contractual obligations to impose only

those fees authorized by the loan documents and to timely and properly respond to inquiries from its customers, and there are common questions of law regarding whether Defendant's similar actions against each Plaintiff and its common schemes, policies, and/or practices violate CUTPA.

82. As a result of its violation of CUTPA, the Defendant is liable to the Plaintiffs for actual and consequential damages, costs, and, attorney's fees pursuant to C.G.S. § 42-110g(d).

83. A copy of this pleading has been mailed to the Attorney General and the Commissioner of Consumer Protection pursuant to C.G.S. § 42-110g(c).

## RELIEF

The Plaintiffs respectfully request that judgment be entered against the Defendant for the following:

    A. Statutory damages pursuant to 12 U.S.C. § 2605(f)(1)(B);

    B. Actual and consequential damages;

    C. Costs and reasonable attorney's fees pursuant to 12 U.S.C. § 2605(f)(1)(C), C.G.S. §42-150bb, and C.G.S. § 42-110g(d); and

    D. For such other and further relief as the Court deems just and proper.

        THE PLAINTIFFS
        TIMOTHY BROWN
        ROBERT POCHESCI
        STEVA POCHESCI
        HARRY T. RICH
        LISA E. RICH

By Counsel: /s/ Jeffrey Gentes
        Jeffrey Gentes (ct28561)
        Connecticut Fair Housing Center
        221 Main Street, 4th Floor
        Hartford, CT  06106
        (860) 263-0741
        (860) 247-4236 fax
        jgentes@ctfairhousing.org